CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 22 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HU TEHUTI, | ) CASE NO. 7:17CV00126 |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| A. DAVID ROBINSON, ET AL., | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| Defendants. | ) |

Hu Tehuti, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. He alleges that the defendants have violated his free exercise and due process rights related to his religious diet and other religious practices. After review of the record, the court concludes that the motion to dismiss must be granted in part and denied in part.

I.

Tehuti is serving a total sentence of 91 years in the Virginia Department of Corrections ("VDOC") and since June 9, 2015, he has been incarcerated at River North Correctional Center ("River North"), where his current claims arose. Tehuti describes himself as "a Black African American. . . . [who believes] that all Black people are descendants of Noah's Black son Ham in the Holy Bible, Genesis 6:10." Compl. 12, ECF No. 1. Tehuti believes that "the 'African American Church' ["AAC"] is a covenated [sic] community established by the God of Ham for Ham's descendants." Id. According to Tehuti, "[o]bservant AAC members fast between dawn and sunset during the 31 days of Hebsed" (March 1 through 31) and "celebrate the first fruit harvest during December 26 through January 1." Id. Tehuti also states that

> [i]t is ordained for the AAC to gather all of the congregation together on Saturday and other religious days for AAC religious services, prayers, study groups, meetings and religious activities in accordance[ ] with Leviticus 8:3 and Psalms

26:12." Also it is the practice of the AAC and Tehuti to eat a vegetarian no-meat-flesh-fish-eggs diet in accordance with their dietary requirements in Genesis 1:9.

Id. at 17. More specifically, Tehuti believes he should eat "only fruits, vegetables, grains, beans, plants, nuts, and foods whose growth yields seed for food" and may not eat "any flesh, fish, bird, animal or any living creature that breathed the breath of life and bleed[s] blood." Id. at 20.

When Tehuti arrived at River North, he requested and was assigned to receive a "no-meat food tray." Id. at 12. Tehuti discovered that the no-meat menu included fish twice a week and beans twice a day, every day, which he believed would cause him abdominal discomfort. Id. at 17. When Tehuti asked for substitute food items, Food Service officials agreed to provide a substitution for fish, but not for eggs or beans. Id. at 18-19.

Tehuti was approved to receive specialty Common Fare meals beginning in late December 2015. As part of the approval process, he signed an agreement stating that the diet met his religious dietary needs. The agreement form stated that "possessing unauthorized food items from the main line" was a violation of the Common Fare program that would lead to removal from that diet for at least six months. Id. Ex. 7, ECF No. 1-1.

Tehuti now contends that neither Common Fare nor the no-meat menu of the main food line complies with his religious dietary needs. He claims that the Common Fare menu includes eggs, tuna fish, and "several other non-vegetarian foods." Id. at 20. Tehuti claims that he has been "burdened to choose between not eating full course meals to avoid eating forbidden food; . . . eating full course meals" including forbidden food items, or trading "those forbidden food items to other inmates for vegetarian foods from the main line." Id. at 21. On September 6, 2016, an official reported observing Tehuti receiving food from a regular meal tray, a violation of his Common Fare Agreement. The Institutional Classification Authority ("ICA") conducted a hearing on this issue and recommended that Tehuti be suspended from Common Fare

2

participation for six months. When Tehuti appealed this finding, he was awarded a rehearing, at which the ICA again recommended suspension; the recommendation was approved and upheld on appeal.

On November 11, 2015, Tehuti submitted a "request for AAC Recognition of Religious Group." Id. at 13. After waiting six months to have AAC religious programming made available at River North, Tehuti filed a Regular Grievance. He received the following "Level I" response, dated July 26, 2017:

> In your grievance you state that on November 27, 2015 you submitted a "Request for Recognition of Religious Group" to Chaplain Anderson; and both Chaplain Anderson and Ms. Higgins led you to believe it was approved and would start in June 2016. You declare [River North] staff intentionally failed to process your African American Church Request for Recognition of Religious Group. You attest on 6/30/2016 Miss Higgins provided a listing of religions approved to operate in DOC facilities, which showed your request was never processed.
>
> As a result of this grievance you would like for this matter to be investigated . . . and for it to be determined who failed to process your request to have this religion recognized. . . .
>
> An investigation into your complaint indicates: Evidence . . . show[s] where you submitted a Request for Service form on March 16, 2016; requesting to be placed on the list to attend the [AAC] Religious program when it's available at [River North]. You were informed at that time . . . that the [AAC] was not an approved religion to operate within the VADOC and that you would need to submit a Request for Recognition of Religious Group form to possibly receive approval. You have been informed of the proper steps to take . . . but have not done so. . . .

Id. Exh. 1A, at 3, ECF No. 1-1. The grievance was ruled unfounded, and that finding was upheld on appeal.

On July 13, 2016, Tehuti submitted a request to have the AAC approved as a religious group. Under the VDOC policy on inmate religious programs, Operating Procedure ("OP") 841.3, an inmate's request for recognition of a new religious group or activity must be considered by the Faith Review Committee ("FRC"); the FRC's recommendation on the request

3

must then be reviewed by the Chief of Corrections Operations for approval before that religion will be allowed to operate within VDOC facilities.[1] On December 19, 2016, without holding an "ICA hearing," the FRC recommended disapproval of Tehuti's request to have AAC recognized as a religion without providing him notice of its rationale for doing so or giving him "a meaningful post-deprivation appeal review of its decision." Id. at 24. Tehuti filed a Regular Grievance contesting the decision. River North Warden Barry Knode issued a Level I response on January 31, 2017, ruling the grievance to be unfounded, because no one had violated VDOC policy. Tehuti appealed, and a Level II response upheld the Level I finding.

Tehuti filed this action in March 2017, seeking only declaratory and injunctive relief. Accordingly, the court liberally construes his complaint as asserting the following claims under the First Amendment and RLUIPA: (1) the defendants have failed to meet his religious dietary needs to omit eggs and include fewer servings of beans;[2] and (2) the defendants are violating his right to free exercise of his AAC practices to participate in weekly group religious services and to celebrate a religious fast in March and religious holy days in December. Tehuti also alleges a claim that: (3) OP 841.3, the procedure a VDOC inmate must use to seek approval of a new religious group or activity, does not provide adequate procedural protections, in violation of the Fourteenth Amendment. The defendants have filed a motion to dismiss,[3] and Tehuti has responded, making the motion ripe for disposition.

---

[1] See http://www.vadoc.virginia.gov/about/procedures/default.shtm (last visited Jan. 10, 2018).

[2] Tehuti also complains that his past suspension from the Common Fare program violated his right to free exercise of his religious dietary beliefs. Because Tehuti seeks only prospective (future) relief, however, the court does not construe his complaint as raising a separate claim under § 1983 about the validity of the past Common Fare suspension proceedings.

[3] As defendants, Tehuti has named Robinson, Kanode, Morrison, Dowell, Walrath, Elam, the VDOC, the FRC, and Kilbourne.

II.

A. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In evaluating the sufficiency of a pro se complaint, the court accepts as true all well-pled facts and liberally construes those facts in the light most favorable to the pleader. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

B. Failure to Exhaust Available Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," Ross v. Blake, 136 S. Ct. 1850, 1856 (2016),[4] and "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. Woodford v. Ngo, 548 U.S. 81, 90-94 (2006). Although failure to exhaust is an affirmative defense, "a prisoner's complaint may be dismissed for non-exhaustion 'in the rare case where failure to exhaust is apparent from the face of the complaint.'" Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017).

---

[4] Here and elsewhere in this opinion, the court has omitted internal quotation marks, alterations, and citations.

The defendants argue that Tehuti failed to exhaust available remedies as to his claim that he is being denied an adequately nutritious and egg-free, vegetarian diet consistent with his religious tenets. The court agrees.[5]

Tehuti's complaint indicates that when an inmate properly files a Regular Grievance, he will receive a Level I response about his issue. If he is dissatisfied with that response, he can then appeal for review at Level II of the procedure. Tehuti followed these procedures when challenging the FRC's decision not to recommend approval of the AAC as a religion for accommodation in VDOC facilities.

It is clear from the face of Tehuti's complaint, however, that he did not properly follow these procedures when grieving his religious dietary concerns. See gen. Compl. 18 and Ex. 3-5, ECF No. 1-1. When Tehuti filed Regular Grievances asking for food substitutes for eggs and beans on his meal trays, he did not state that eggs are inconsistent with his religious dietary beliefs. Both Regular Grievances were rejected at the intake stage as requests for services rather than grievances. Tehuti failed to correct this deficiency by filing a request for services about his religious dietary concerns, as instructed by the grievance response. If he had done so and officials had denied the requested services (diet changes), Tehuti could have followed up with a properly formulated Regular Grievance about that denial and, if dissatisfied with the Level I response, he could have pursued the available appeal to Level II. See McElroy v. Clarke, No. 7:16CV00245, 2017 WL 2570668, at *3 (W.D. Va. June 14, 2017), aff'd, 704 F. App'x 254 (4th Cir. 2017) (finding failure to exhaust when inmate failed to file request for services and then pursue regular grievance procedure and appeals). Because Tehuti failed to make use of these available steps in the administrative remedy procedures before filing this action, the court will

---

[5] The defendants do not argue that Tehuti's claims seeking accommodation of other AAC religious beliefs should be dismissed for failure to exhaust administrative remedies.

grant the motion to dismiss as to his religious diet claim about eggs and beans and dismiss this claim without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

## C. First Amendment and RLUIPA Claims

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Wilcox v. Brown, 877 F.3d 161, 168 (4th Cir. 2017). Under RLUIPA, "when a prison substantially burdens an inmate's exercise of religion, the prison must demonstrate that imposing the burden serves a compelling government interest and does so by the least restrictive means." Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006). For either a First Amendment or a RLUIPA claim, then, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise." Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir. 2016). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace, 472 F.3d at 187 (RLUIPA context) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981) (First Amendment context)).

The defendants argue that Tehuti has failed to state facts showing that denial of his request for approval of the AAC as a religious group in the VDOC has placed a substantial burden on his religious practice. The court cannot agree.

7

At the pleading stage, an inmate's allegation that his religious beliefs require his participation in a group service or celebration of a particular ritual that prison officials have not accommodated is sufficient to meet the substantial burden element of a First Amendment or RLUIPA claim. See Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) ("At the pleadings stage, the allegation that [plaintiff's] beliefs required him to attend the group service [was] sufficient" to state a substantial burden on those beliefs); Cf. Jehovah v. Clarke, 798 F.3d 169, 173 (4th Cir. 2015) (accepting as sufficient at pleadings stage the allegation that plaintiff's religion required him to abstain from work from Friday at sundown to Monday at sunrise).

The court concludes that Tehuti has met this minimum pleading burden. He alleges that his AAC beliefs require adherents to meet for group services on Saturdays, to fast during daylight hours in March, and to celebrate holy days in December. See Compl. at 12, 17, ECF No. 1. Prison officials allegedly advised him that any accommodations of AAC religious practices could begin at River North only after the FRC had recommended approval of this religious group, but approval was not granted. The court finds these allegations sufficient to state claims that the failure to approve the AAC as a religious group pressures Tehuti to violate his beliefs by not being able to observe these practices of his religion.

Once Tehuti has shown that an action or policy has placed a substantial burden on his religion, the defendants must present evidence of the prison's penological interests. In a First Amendment challenge, the defendants must show that the action or policy "is reasonably related to legitimate penological interests," such as security, discipline and efficient use of limited resources. O'Lone, 482 U.S. at 348; Turner v. Safley, 482 U.S. 78 (1987) (setting out four-factor test for this analysis). When the challenge arises under RLUIPA, prison officials must show that the action or policy "furthers a compelling governmental interest by the least restrictive means."

8

Incumaa, 791 F.3d at 525. The defendants have not yet identified a penological objective that they contend justified the failure to recognize the AAC as a religious group and to accommodate the requested practices. "[I]t is not the courts' role to simply invent possible objectives that Defendants have not even claimed were the basis for their policy." Wilcox, 877 F.3d at 169. Therefore, the court will deny the motion to dismiss as to Tehuti's First Amendment and RLUIPA claims, seeking injunctive relief to have the AAC and its weekly group services and holy day observances approved for accommodation in VDOC prison facilities.

### D. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. For Tehuti to succeed on a procedural due process claim, he must show that practicing his AAC holy days constitutes

> a liberty interest protected by the Due Process Clause, an interest that can arise either from the Constitution itself or from state laws or policies, Wilkinson v. Austin, 545 U.S. 209, 220-221, 125 S. Ct. 2384, 2393, 162 L.Ed.2d 174 (2005); ... denial imposed on him an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995); and the process that the state prison employed was constitutionally inadequate, Wilkinson, 125 S. Ct. at 2395-96, 125 S. Ct. 2384 (2005). The adequacy of the procedures in place is assessed by balancing three factors: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation through the procedures used and the probable value, if any, of alternative or additional procedures; and (3) the state's interest, including the function involved and the fiscal and administrative burdens of added safeguards. Id.

Lovelace, 472 F.3d at 202.

The court concludes that Tehuti has alleged facts surviving the motion to dismiss as to his due process claim. Tehuti may be able to prove that he had a protected liberty interest in observing the weekly religious services and holy days of his chosen faith while in prison, derived

from his constitutional right to free exercise of religious beliefs. See, e.g., Hammer v. Keeling, No. 1:14CV8 JCC/MSN, 2015 WL 925880, at *8 (E.D. Va. Mar. 3, 2015), aff'd sub nom. Hammer v. Hobbs, 613 F. App'x 224 (4th Cir. 2015) ("In this case, it is undisputed that plaintiff has a liberty interest in a religious diet based on his First Amendment right to free exercise."). Tehuti's submissions also indicate that he cannot currently observe one or more of these requested religious practices, had no opportunity to discuss the desired religious accommodations with the FRC in the course of their deliberations or thereafter, and received no statement of the reason(s) for their decision not to recommend approval of the AAC as a religious group in the VDOC. As such, the court concludes that Tehuti's allegations give rise to a viable argument that the procedure used to deny him accommodation of his religious practices was not adequate to protect against "'the risk of an erroneous deprivation.'" Wilkinson, 545 U.S. at 224 (2005) (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). Therefore, the court will deny the motion to dismiss as to the due process claim.

III.

For the reasons stated, the court concludes that the defendant's motion to dismiss must be granted in part and denied in part. An appropriate order will issue this day.

The clerk will send a copy of this memorandum opinion and the accompanying order to the parties.

ENTER: This 22<sup>d</sup> day of January, 2018.

/s/ Glen Conrad
Senior United States District Judge